IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **NATIONAL ASSOCIATION OF MANUFACTURERS, NATURAL GAS SERVICES GROUP, INC.,** *Plaintiffs***,** | § § § § § § § § § § § § § | **MO:22-CV-00163-DC** |
| v. | | |
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION, GARY GENSLER, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE SEC,** *Defendants***.** | | |

## MEMORANDUM OPINION

This case concerns arbitrariness and capriciousness under the Administrative Procedure Act ("APA"). Put more simply, this case is about whether the SEC's decision to rescind proxy voting advice conditions and an explanatory note was reasonable and reasonably explained.

### BACKGROUND

The questions in this case revolve around proxy voting advice businesses ("PVABs"). PVABs provide institutional investors and intermediaries ("Proxy Clients") with research and analysis on shareholder proposals from publicly traded companies ("Registrants"). PVABs also recommend how their Proxy Clients, who are voting on behalf of their customers, should vote on Registrants' shareholder proposals ("Proxy Voting Advice"). Natural Gas Services Group, one of the National Association of Manufacturers' members ("Plaintiffs"), is a registrant covered by PVABs' Proxy Voting Advice.

Congress has granted the SEC ("Commission") broad authority to regulate the Proxy Voting Advice. The Commission has long considered Proxy Voting Advice to be "solicitation," an act subject to burdensome disclosure and filing requirements ("Proxy Rules").[1] Yet, historically, PVABs could avoid such requirements through two exemptions.

In 2020, the Commission adopted an amendment to the Proxy Rules; PVABs would only be eligible for the exemptions if they met two conditions ("2020 Rule").[2] First, PVABs would need to include certain conflicts-of-interests disclosures with their delivered Proxy Voting Advice.[3] Second, PVABs would need to adopt policies and procedures that (1) made their Proxy Voting Advice available to Registrants "at or prior to the time" PVABs delivered it to their Proxy Clients and (2) provided PVABs' Proxy Clients with a "mechanism" by which they would "become aware" of Registrants' written responses to the Proxy Voting Advice ("Notice-Awareness Conditions").[4]

With the 2020 Rule, the Commission also added to Rule 14a-9, which prohibits materially false or misleading statements, explanatory Note (e).[5] Note (e) provided examples of material misstatements or omissions related to Proxy Voting Advice.[6]

Yet around two years later, the Commission reversed course, removing the Notice-Awareness Conditions and Note (e) ("2022 Rescission").[7] The Commission's main reasoning was that the Notice-Awareness Conditions did not "sufficiently justify the risks they pose[d] to the cost, timeliness, and independence of proxy voting advice on which many investors

---

[1] *See Concept Release on the U.S. Proxy System*, 75 Fed. Reg. 42,982, 43,009 (July 22, 2010).
[2] *Exemptions From the Proxy Rules for Proxy Voting Advice*, 85 Fed. Reg. 55,082 (Sept. 3, 2020) (2020 Rule).
[3] *Id.* at 55,154.
[4] *Id.*
[5] *Id.* at 55,155.
[6] *Id.*
[7] *Proxy Voting Advice*, 87 Fed. Reg. 43,168 (July 19, 2022) (2022 Rescission).

2

rely."[8] And when rescinding Note (e), the Commission highlighted that Note (e) presented a "risk of confusion regarding the application of Rule 14a-9 to proxy voting advice."[9]

Plaintiffs sued the Commission and Chair Gary Gensler (in his individual capacity) in July 2022. Plaintiffs alleged that the Commission's decision to rescind the 2020 Rule and Note (e) was (1) arbitrary and capricious and (2) procedurally deficient. A few months later, Plaintiffs and the Commission cross-moved for summary judgment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains, and the party is entitled to judgment as a matter of law. "When assessing a summary judgment motion in an APA case, the district judge sits as an appellate tribunal," and "[t]he entire case on review is a question of law."[10] "In the context of a challenge to an agency action under the APA, '[s]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review.'"[11]

## DISCUSSION

Congress gave the Commission the authority to regulate proxy solicitation "as necessary or appropriate in the public interest or for the protection of investors."[12] The Commission's authority to craft policy, however, is governed by the APA. Broadly speaking,

---

[8] *Id.* at 43,175.
[9] *Id.* at 43,170.
[10] *Permian Basin Petrol. Ass'n v. U.S. Dep't of the Interior*, 127 F. Supp. 3d 700, 706 (W.D. Tex. 2015).
[11] *Delta Talent, LLC v. Wolf*, 448 F. Supp. 3d 644, 650 (W.D. Tex. 2020) (quoting *Am. Stewards of Liberty v. Dep't of Interior*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019)).
[12] 15 U.S.C. 78n(a)(1).

3

the APA outlines the procedures an agency must follow when promulgating policy and the external oversight mechanisms for those procedures. One such mechanism is judicial review.

Under the APA, if an agency's action causes a legal wrong or adversely affects a person, that person is entitled to judicial review.[13] But the APA limits the scope of that review. For example, a reviewing court may set aside agency action only if the findings and conclusions are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[14] This case centers on that standard.

Plaintiffs' big-picture claim is that the Commission's decision to rescind the 2020 Rule was "arbitrary and capricious," thus violating the APA. Plaintiffs' arguments for why the 2022 Rescission was arbitrary and capricious—and the Commission's rebuttals—can be boiled down into three issues:

> (1) Was the Commission required to provide a "more detailed justification" because the 2022 Rescission reversed a prior policy position?
>
> (2) Were the Commission's stated justifications for the 2022 Rescission rational?
>
> (3) Was the 2022 Rescission procedurally valid?

Plaintiffs also allege a related (but distinct) claim that the Commission improperly removed Note (e). The Court addresses these issues in turn.

## I.     Was a "more detailed justification" required?

Plaintiffs first argue that the Commission must give a "more detailed justification" than normal under the "arbitrary and capricious" standard because the 2022 Rescission reversed a prior policy decision.[15]

---

[13] 5 U.S.C. § 702.
[14] § 706(2)(A).
[15] Doc. 15 at 12.

### A. The "arbitrary and capricious" standard.

According to the Supreme Court, an agency's action is not "arbitrary and capricious" if the agency examined "the relevant data" and articulated a "satisfactory explanation."[16] A "satisfactory explanation" includes a "rational connection between the facts found and the choice made."[17]

The Supreme Court has also stated that, in general, there's no distinction "between initial agency action and subsequent agency action undoing or revising that action."[18] Thus, the normal arbitrary and capricious standard would apply. An exception to that general rule, however, is when an agency's "new policy rests upon factual findings that contradict those which underlay its prior policy."[19] In that case, the agency must give a "more detailed justification."

Here, the Commission first "concluded that no risk to the timeliness and independence remained at all under the 2020 Rule."[20] But just two years later, the Commission concluded that the 2020 Rule *did* pose a risk to the cost, timeliness, and independence of PVABs.[21] The Commission argues that the 2022 Rescission merely weighed the same risks that the 2020 Rule did but reached a different conclusion: the informational benefits did not justify the "potential adverse effects" to PVABs.[22] Plaintiffs counter that the

---

[16] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).
[17] *Id.*
[18] *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).
[19] *Id.*
[20] Doc. 20 at 2.
[21] Doc. 15 at 13 (emphasis added).
[22] Doc. 18 at 14.

5

"existence or non-existence of a particular risk *is* a factual finding."[23] Thus the Commission should have provided a more detailed justification.

So for Plaintiffs' argument to succeed, the 2020 Rule must have been based on the "non-existence" of the risk to PVABs. Indeed, if the 2020 Rule and the 2022 Rescission highlighted the same risk, but weighed it differently, the factual findings didn't change. Rather the Commission's policy conclusion—that the risk to PVABs was not justified—did.

Yet Plaintiffs undercut their own argument in their briefing. For instance, Plaintiffs' briefing concedes that the public commentators' concerns about the 2020 Rule's risk to PVABs existed in 2020. Quoting Plaintiffs, "these 'concerns' were not new; rather, they were 'reiterated' from the 'prior rulemaking process'—that is, the adoption of the 2020 Rule itself."[24] Or even more obviously, a heading from Plaintiffs' motion reads: "The SEC has not proffered an adequate explanation for reversing course *on the same factual record*."[25]

And even without Plaintiffs' concession, the risk to PVABs existed. Indeed, the Commission believed that the 2020 Rule's final form "addressed the concerns raised by commenters regarding the potential unintended consequences of requiring a proxy voting advice business to engage with a registrant in connection with its proxy voting advice, including those related to timing and the risk of affecting the independence of the advice."[26] Or like the 2022 Rescission acknowledged, the Commission originally believed the Notice-Awareness Conditions "adequately mitigated" the "serious concerns that the proposed advance review and feedback conditions would adversely affect the cost,

---

[23] *Id.* at 3.
[24] Doc. 15 at 13.
[25] *Id.* at 12 (emphasis added).
[26] 2020 Rule, 85 Fed. Reg. 55,082, 55112.

6

timeliness, and independence of proxy voting advice."[27] Yet the Commission ultimately "weigh[ed] these competing concerns differently" in 2022.[28] Thus, the risk to PVABs was not a "factual finding" but a policy decision that weighed the same factual record differently.

### B. Distinguishing *Texas v. Biden*.

Because the risk to PVABs was not a factual finding, the Fifth Circuit's opinion in *Texas v. Biden* can be distinguished from this case. There, the Biden Administration's Department of Homeland Security ("DHS") tried to terminate the Trump Administration's 2019 immigration policy—commonly known as "Remain in Mexico."[29] In 2019, Trump's DHS found that the Remain in Mexico policy "demonstrated operational effectiveness" and that "[b]order encounters with Central American families . . . have decreased by approximately 80%."[30] As a result, "aliens without meritorious claims . . . were beginning to voluntarily return home."[31]

Yet when Biden's DHS tried to end the Remain in Mexico policy through a memorandum on June 1, 2021 ("Termination Decision"), its conclusion that the policy "had mixed effectiveness in achieving several of its central goals" was based on different factual findings.[32] For example, the Termination Decision omitted facts like the decrease in "the number of aliens attempting to illegally cross the border."[33] Or it added factual findings like

---

[27] 2022 Rescission, 87 Fed. Reg. 43,168, 43174–75.
[28] *Id.* at 43175.
[29] *Texas v. Biden*, 20 F.4th 928, 990–91 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *cert. granted*, 212 L. Ed. 2d 1, 142 S. Ct. 1098 (2022), and *rev'd and remanded*, 213 L. Ed. 2d 956, 142 S. Ct. 2528 (2022).
[30] *Texas v. Biden*, 554 F. Supp. 3d 818, 833 (N.D. Tex.) (cleaned up).
[31] *Id.*
[32] *Texas*, 20 F.4th at 991.
[33] *Texas*, 554 F. Supp. 3d at 837.

Covid-19's impact on the policy.[34] Thus, the Fifth Circuit shot down DHS's termination because DHS never addressed "its prior factual findings—explaining why they were mistaken."[35]

The 2022 Rescission's *conclusion* was an abrupt about-face. But the *factual findings* on which the 2022 Rescission based that conclusion were the same. In comparison, the Biden DHS in *Texas* arrived at a different conclusion after adding and removing factual findings. So Plaintiffs' argument that later factual findings don't have to be cast as "diametrically opposed absolutes" to contradict earlier findings is likely correct.[36] But that's not the issue here. The 2022 Rescission did not add or remove factual findings from the 2020 Rule; Plaintiffs concede the 2022 Rescission was based on "the same factual record."[37] Therefore, the Commission did not contradict prior *factual* findings and was not required to provide a more detailed justification.

## II.    Were the Commission's stated justifications for the 2022 Rescission rational?

Because a more detailed justification was not required, the general standard controls: the Commission must have (1) examined "the relevant data" and (2) articulated a "satisfactory explanation" possessing a "rational connection between the facts found and the choice made."[38] Or put another way, the Commission's action must have been "reasonable and reasonably explained" after considering "the relevant issues."[39]

---

[34] *Id.* at 836 ("The Secretary also added that '[a] number of the challenges faced by MPP have been compounded by the COVID-19 pandemic'").
[35] *Texas*, 20 F.4th at 991.
[36] Doc. 20 at 3, n.1.
[37] Doc. 15 at 12.
[38] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).
[39] *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

A court's review, however, is highly deferential; the scope of review is "narrow." If the agency's action was within "the bounds of reasoned decision making," the reviewing court should defer to the agency's discretion. Indeed, "a court may not substitute its own policy judgment for that of an agency."[40]

Plaintiffs don't argue that the Commission failed to examine the relevant data. Plaintiffs dispute the rationality of using the same data to arrive at a different conclusion.[41] So the question is whether the Commission articulated a "satisfactory explanation."

### A. Articulating a satisfactory explanation that rationally connects the facts to the conclusion.

First, when rescinding a prior policy, a "satisfactory explanation" includes the agency's "awareness that it *is* changing position."[42] There's no dispute about the Commission's awareness; the Commission acknowledged its policy U-turn multiple times. For instance, the 2022 Rescission states, "[w]e have revisited our analysis of those issues, however, and are now striking a different and improved policy balance."[43] And a few pages later, the Commission admitted it was weighing "the competing concerns differently today."[44] Plaintiffs' argument then, is that the 2022 Rescission failed to establish a "rational connection between the facts found and the choice made."

To rationally connect the facts to its rescission decision, the Commission need not prove that "the reasons for the new policy are better than the reasons for the old one."[45] In fact, they must only show there are "good reasons" for the new policy and "the agency

---

[40] *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quoting *State Farm*, 463 U.S. at 43).
[41] Doc. 15 at 12.
[42] *Fox*, 556 U.S. at 515.
[43] 2022 Rescission, 87 Fed. Reg. 43,168, 43,169–70.
[44] *Id.* at 43,175.
[45] *Fox*, 556 U.S. at 515.

9

believes it to be better."[46] The Commission provided two reasons why it believed the 2022 Rescission was better policy. First, the 2022 Rescission would "alleviate[] costs . . . to PVABs" imposed by the 2020 Amendments.[47] Second, reversing the 2020 Amendments would better "address PVAB clients' and other investors' concerns about receiving timely and independent advice from PVABs."[48] The analysis then, is whether the Commission "rationally connected" the facts to the 2022 Rescission.

       *i. Increased Compliance Costs to PVABs and registrants.*

Plaintiffs don't engage with the Commission's reasoning about how the 2022 Rescission alleviated PVABs' financial burden. In the release adopting the 2020 Rule, the Commission estimated that the 2020 Rule would subject PVABs to "an annual total increase of 34,140 hours in compliance burden."[49] And after adding Registrants' estimated burden hours, the Commission calculated an aggregate increase of 318,640 burden hours for PVABs and registrants.[50]

But in the 2022 Rescission, the Commission weighed those same facts differently, concluding that alleviating costs on PVABs and Registrants was a better policy. Likewise, the 2022 Rescission would "decrease [PVABs and] registrants' paperwork burdens by the same [318,640 burden hours]."[51] The Commission agreed with public comments that the Notice-Awareness Conditions imposed "increased compliance costs on PVABs, without

---

[46] *Id.*
[47] *Id.* at 43,170
[48] *Id.*
[49] *Id.* at 43,192.
[50] *Id.* at 43,193, n.18.
[51] *Id.* at 43,192.

10

corresponding investor protection benefits."[52] And it is well within the "zone of reasonableness" for the Commission to remove increased compliance costs that—in the Commission's expert judgment—did not provide sufficient investor protection benefits.[53] Thus, the Court finds the Commission's reasoning rationally connected the facts (the increased compliance costs) to its conclusion (rescinding the 2020 rule would alleviate those costs).

        ii. *Risk to the timeliness and independence of PVABs.*

Plaintiffs first argue that the Commission "articulated *no* explanation" on why the Notice-Awareness Conditions affected the timeliness or independence of proxy voting advice.[54] But that's inaccurate—the incorporated outside comments into the 2022 Rescission's reasoning. For instance, the Commission quoted a public commentator's reasoning that the 2020 Rule could "jeopardize the independence of proxy advice" because PVABs "may feel pressure to tilt voting recommendations in favor of management more often, to avoid critical comments from companies that could draw out the voting process and expose the firms to costly threats of litigation."[55] The Commission also noted that the Notice-Awareness Conditions could impair PVABs' independence by causing them to "err[] on the side of caution in complex or contentious matters."[56]

Because the Commission did articulate a reason, Plaintiffs next claim that the Commission must provide its own explanation—not just repeat public commentators'

---

[52] *Id.* at 43,175.
[53] *See Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).
[54] Doc. 15 at 14.
[55] 2022 Rescission, at 43,175.
[56] *Id.* at 43,189.

11

"concerns."[57] But Plaintiffs provide no authority that says an agency's entire reasoning must be its own. In contrast, courts like the Sixth Circuit and the District of Columbia Court of Appeals have reasoned that government agencies can find "support in various comments submitted in response to the proposed rule."[58] That reasoning is persuasive.

Allowing an agency to incorporate comments into a final rule is also logically persuasive for two reasons. First, because the agency's decision is based on the administrative records, the APA requires courts conducting an arbitrary and capricious analysis to "review the whole record or those parts of it cited by a party."[59] The "whole record" includes comment letters from the rulemaking process and the Commission cited the parts it considered compelling in the 2022 Rescission. Thus, the Court can review the 2022 Rescission's citations to the administrative record for "rational connection."

Second, if an agency was barred from incorporating public comments into the final rule, what's the point of public comment? Indeed, even the 2020 Rule's final form resulted from public comments criticizing the scope of Notice-Awareness Conditions in the 2019 proposing release.[60] Accordingly, an agency should be encouraged—not discouraged—to incorporate and adopt public comments from industry players affected by that agency's action.

---

[57] Doc. 15 at 14.
[58] *See, e.g.*, *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009) (Kavanaugh, J.); *Oakbrook Land Holdings, LLC v. Comm'r of Internal Revenue*, 28 F.4th 700 (6th Cir. 2022) ("a careful reading of the agency's published notices, from its original grant of the petition for rulemaking to its final rule, may still disclose a 'reasoned path' that the agency followed to reach its ultimate rule").
[59] 5 U.S.C. § 706.
[60] Doc. 15 at 6–7 ("But in response to 'concerns raised by commenters regarding the potential unintended consequences' of the 2019 frame . . . the SEC materially softened its approach . . . ").

Case 7:22-cv-00163-DC   Document 21   Filed 12/04/22   Page 13 of 18

Plaintiffs likewise argue that the Commission's reasoning was not "satisfactory" because they don't believe the notice-awareness conditions pose such a risk to PVABs. But that argument, in effect, asks this Court to "substitute its judgment for that of the agency."[61] The Court will not do so. Thus, it is reasonable "in light of the continued, strong opposition to the [notice-awareness] conditions" that the Commission would weigh the risk to PVABs differently.[62] And based on the Commission's reasoning in the 2022 Rescission, rescinding the Notice-Awareness Conditions was "rationally connected" to the public commentators'—and the Commission's—concerns that such conditions posed a risk to the timeliness and independence of PVABs.[63]

## III. Was the 2022 Rescission procedurally valid?

Shifting gears, Plaintiffs argue that the 2022 Rescission was procedurally deficient because the 31-day comment period—which included the Christmas and Hanukkah holidays—did not provide a "meaningful opportunity for comment."[64] Although the APA does require agencies to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments," it does not specify how much time an agency must provide.[65]

The Supreme Court has noted that the comment period under the APA is a "minimum of 30 days."[66] And the Fifth Circuit agrees, holding that a proposed action under

---

[61] *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).
[62] 2022 Rescission, 87 Fed. Reg. 43,168, 43,175
[63] *State Farm*, 463 U.S. at 43.
[64] Doc. 15 at 23.
[65] 5 U.S.C. § 533(b)–(c).
[66] *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1809 (2019) (noting that the Medicare Act's 60-day comment period was "twice the APA minimum of 30 days").

13

the APA generally requires a minimum 30-day comment period.[67] The Court will therefore start from that general 30-day rule.

Plaintiffs then, are left with two arguments. First, by including the Christmas and Hanukkah holidays in the 31-day period, the Commission functionally made the comment period less than the "minimum" 30 days. Second, other authorities have recommended that the comment period be 60 days.

### A. Including holidays in the 31-day comment period.

Plaintiffs argue that the Christmas and Hanukkah holidays effectively shortened the comment period to under 30 days, thus violating the APA. To support that argument, Plaintiffs cite two California district court cases to exemplify that courts have not "hesitated to find similarly shortened and inconveniently timed comment periods unlawful."[68] But the cases are not from different courts or even different judges—it was the same judge in the same court. What's more, both cases start with the Third Circuit's reasoning that the "usual amount of time allotted for a comment period" is 90 days.[69] Thus, the only authority Plaintiffs mustered to support the notion that "inconveniently timed comment periods" violate the APA was non-binding authority from a single California district court starting with another circuit court's "usual" comment period of 90 days.

---

[67] *See, e.g., Chem. Mfrs. Ass'n v. E.P.A.*, 899 F.2d 344, 347 (5th Cir. 1990) (the APA generally requires "publication of the proposed action and a minimum thirty-day period for participation in the rulemaking through comment");
[68] Doc. 15 at 25 (quoting *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 501 F. Supp. 3d 792, 819–20 (N.D. Cal. 2020) (Illston, J.)); *see also Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919 (N.D. Cal. 2021) (Illston, J.).
[69] *E.g., Pangea*, 501 F. Supp. 3d at 819 (citing *Prometheus Radio Project v. F.C.C.*, 652 F.3d 431, 453 (3d Cir. 2011))

The Federal Rules of Civil Procedure also support counting holidays. For example, Rule 6 applies to "any time period . . . in any statute that does not specify a method of computing time." And when a period is stated in days, Rule 6(a)(1)(B) states, "count every day, including intermediate Saturdays, Sundays, and *legal holidays*."[70] So even the federal rules would count Christmas and Hanukkah.

In sum, the Supreme Court stated in *Perez v. Mortgage bankers Association* that the APA "established the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures."[71] Indeed, lower courts should not "impose upon an agency its own notion of which procedures are 'best.'"[72] Thus, the Court will not introduce its own policy preferences about what is a "meaningful opportunity." Nor will the Court read into the Supreme Court and Fifth Circuit's precedent that "inconveniently timed comment periods" violate the APA.

### B. Other authorities recommend a 60-day comment period.

Plaintiffs provide various reasons that the comment period should be 60 days like Chair Gensler's congressional testimony and the Administrative Conference's recommendation for "significant regulations."[73] Yet those arguments run into the same problem as the above—Plaintiffs do not provide any authority to overcome the Supreme

---

[70] (emphasis added).
[71] *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 102 (2015) (quoting *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978)).
[72] *Id.* (quoting *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)).
[73] Doc. 15 at 24, 25 (citing *Fiscal Year 2023 Budget Request for the Federal Trade Commission and the Securities and Exchange Commission* (May 18, 2022) (video at 54:53-55:50); Admin. Conf. of U.S., *Rulemaking Comments* (June 16, 2011)).

Court's proscription against this Court imposing "its own notion of which procedures are 'best.'"[74] Thus, the 2022 Rescission was not procedurally deficient.

### IV. Does the Court have jurisdiction to review the Commission's removal of explanatory Note (e)?

Plaintiffs' last argument revolves around the Commission's removal of Note (e). By removing Note (e), the Commission hoped to address the "risk of confusion regarding the application of Rule 14a-9 to proxy voting advice."[75] But according to Plaintiffs, the Commission's justification—the eliminating "risk of confusion"—doesn't make sense because the Commission "repeated the substance of that note, nearly verbatim" in the 2022 Rescission.[76] On the surface, shoveling Note (e) from the Code of Federal Regulations to the Federal Register does not appear to eliminate any confusion. The Commission counters, however, with an argument Plaintiffs did not address—that this Court lacks jurisdiction to even address this claim.

Under the APA, a court may only review an "agency action" that is "final." The APA defines "agency action" to include five things: the whole or a part of (1) an agency rule, (2) order, (3) license, (4) sanction, or (5) relief.[77] And to be considered final, the agency action must meet two requirements. First, "the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature."[78]

---

[74] *Id.* (quoting *Fox*, 556 U.S. at 513).
[75] Doc. 15 at 21.
[76] *Id.*
[77] 5 U.S.C. § 551(13).
[78] *U.S. Army Corps of Eng'rs v. Hawkes Co.,* 578 U.S. 590, 597 (2016).

16

Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."[79]

The 2020 Rule and the 2022 Rescission both state that Note (e) did not "change the application or scope" of Rule 14a-9.[80] In fact, even Plaintiffs describe Note (e) as merely "explanatory" at various points in their briefing.[81] So because Note (e) was just an "explanatory" note, it would not fall under the APA's five categories of "agency action."

And even if removing Note (e) were an "agency" action, it would not be final. Taking Plaintiffs' phrasing that Note (e) was simply "explanatory," Note (e) did not create "rights or obligations . . . from which legal consequences will flow."[82] Thus, removing Note (e) was not a "final agency action" reviewable under the APA. As a result, this Court lacks the "jurisdictional prerequisite" to review the Commission's removal of Note (e).

## CONCLUSION

Like it or not, changing political winds may factor into an agency's policy preference. But "a court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities."[83] The Commission's 2022 Rescission need only to have been within "the bounds of reasoned decision making." As explained above, it was. Thus, the Court **GRANTS** the Commission's Motion for Summary Judgment.

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment be **GRANTED**. (Doc. 18).

---

[79] *Id.*
[80] 2020 Rule, 85 Fed. Reg. 55,082, 55,121, 55140; 2022 Recession, 87 Fed. Reg. 43,168, 43,180-81.
[81] Doc. 15 at i, 7, 9, 10, 20.
[82] *See Hawkes,* 578 U.S. at 597.
[83] *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019).

It is also **ORDERED** that Plaintiffs' Motion for Summary Judgment be **DENIED**. (Doc. 15).

It is so **ORDERED**.

SIGNED this 4th day of December, 2022.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE